IN THE

# HIGH COURT OF ERRORS AND APPEALS

FOR THE

## STATE OF MISSISSIPPI.

---

### DECEMBER SPECIAL TERM, 1855.

JOHN J. THOMPSON, Plaintiff in Error, *v.* WILLIAM YOUNG,
Defendant in Error.

1. RUNAWAY SLAVE.—It is the right and duty of every citizen to arrest a runaway
   slave; and in so doing, if resisted, he may oppose force to force, even to the
   extent of taking the life of the resistant, if the resistance offered threaten the
   life, or great personal danger to the captor: but this does not authorize the
   captor to slay the slave, to prevent his escape by flight.
2. SAME.—A person slaying a runaway slave, to prevent his escape by flight, is
   liable for his value to the owner: 1 Nott & M'Cord, 182, 183; Iredell, 513; 4 Bibb,
   222; 4 M'Cord, 156-161.

IN error from the Circuit Court of Chickasaw county. Hon.
W. L. Harris, judge.

*C. B. Baldwin,* for plaintiff in error.
*Featherston* and *Orr,* on same side.
VOL. I.—2

*James Phelan*, for defendant in error.

SMITH, C. J., delivered the opinion of the court.

This writ of error is prosecuted to reverse a judgment rendered in the Circuit Court of Chickasaw county.

The proceeding, in its inception, was an action of trespass, brought by Wm. Young against John J. Thompson, for killing the slave of the said Young, by shooting.

In the court below, the defendant pleaded the general issue, and several special pleas, in which, substantially, the same defence was set up. These pleas alleged, with some variety in the phraseology, that at the time of the said supposed shooting, the slave, the subject of the trespass, was a runaway, prowling about the premises of the defendant in the night-time, and that defendant attempted to arrest him and restore him to his master; the said slave being armed with deadly weapons, to wit, a large knife and club, refused to submit to an arrest, but resisted, and by such resistance made it necessary for the defendant to shoot and wound the said slave.

The plaintiff filed a demurrer to the special pleas: the judgment upon which, sustaining the demurrer, presents the only question in the case.

The statute, Hutch. 629, 517, § 33, expressly confers the right; and the policy of the country, makes it the duty of every citizen to arrest a runaway slave. It follows therefore, necessarily, that if any person, in essaying to capture a runaway, shall meet with resistance, he may lawfully oppose force to force. He may even justifiably, in such cases, slay the resistant, if the resistance offered be of such a character as to threaten imminent danger to the life or great injury to the person of the captor.

These rules are essential to the good government of the slave population, and necessary to the safety of the community. The laws for the government of slaves should be enforced firmly and wisely; and of course without unnecessary severity. The law is careful of the safety of the slave within his prescribed sphere. Regarded in the twofold aspect of persons and of property, the same law which protects the master, guards their rights as persons.

It would, hence, be no justification of the homicide of a runaway,

that he was slain by the captor, in an effort to avoid an arrest, by flight. For the same reason, a person in an attempt to arrest a runaway, who offered resistance, would not be justified in taking the life of the slave, unless by such resistance his own person or life were put in imminent danger. 1 Nott & M'Cord, 182; 3 Iredell, 513; 4 Bibb, 222; 4 M'Cord, Rep. 156; Id. 161.

The manner or character of the resistance made, when the plaintiff in error attempted the arrest, is not stated in the pleas. Nor is it averred that his person or life was thereby placed in the slightest danger. From aught that appears on the face of the pleas, he was placed in no greater danger than he would have been, if instead of resisting the runaway had attempted to avoid a capture by flying. An act of homicide committed under such circumstances, cannot be justified by any principle of morality, of law, or of policy growing out of the institution of slavery.

The pleas therefore presented no excuse or justification for the alleged trespass. Consequently the demurrer was properly sustained.

Judgment affirmed.